Slip Op. 10-115

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SHAH BROTHERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Pogue, Judge <br><br> Court No. 09-00180 |

<u>OPINION</u>

[Motion to dismiss Plaintiff's Amended Complaint granted.]

Dated: October 6, 2010

<u>Stein Shostak Shostak Pollack & O'Hara</u> (<u>Elon A. Pollack</u>, <u>Bruce N. Shulman</u>, and <u>Juli C. Schwartz</u>) for the Plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director; <u>Barbara S. Williams</u>, Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (<u>Claudia Burke</u> and <u>Edward F. Kenny</u>) for the Defendant.

**Pogue, Judge:** In this action, Plaintiff Shah Bros. challenges the Defendant's classification of its imported merchandise, and the resulting tariff duties and excise taxes imposed.  Plaintiff seeks reclassification of its goods, a return of said duties and taxes, with interest thereon, and further declaratory relief.  In response to Plaintiff's Complaint, the Defendant confessed judgment to Plaintiff's classification claim, agreeing to refund, with interest, the contested duties and excise taxes.  <u>See</u> USCIT R. 54(b).  The court then dismissed, subject to a right to amend,

Plaintiff's claim for further declaratory relief.

Plaintiff has now filed an amended complaint, alleging a continuing dispute, based on the Alcohol and Tobacco Tax and Trade Bureau's ("TTB") classification of Plaintiff's merchandise, prior to the Defendant's confession of judgment, and U. S. Customs and Border Protection's ("Customs") implementation thereof. In further response, the Defendant now moves to dismiss Plaintiff's amended complaint for lack of subject jurisdiction, claiming that its confession of judgment has rendered Plaintiff's complaint moot.

As explained below, the court concludes that the responsibility for the administration and enforcement of the duties and taxes at issue lies with Customs – not TTB. Therefore, it is Customs' decisions that are at issue. As Plaintiff has not established that the statutory protest procedure, and the special provisions for judicial review thereof, provide an inadequate remedy for these Customs' decisions, the court dismisses Plaintiff's Amended Complaint.

## I. Background

Five entries[1] of Plaintiff's merchandise (imported through the port of Memphis) are at issue.[2] Specifically, in 2007, Plaintiff

---

[1] The five entries listed in the Summons, are: D52-8900504-8, D52-8900489-2, D52-0899860-4, D52-0899773-9, and D52-0899179-9. (Def.'s Mot. for Entry of Confession of J. in Pl.'s Favor 1; Pl.'s Summons 1, 3.)

[2] Plaintiff imports and sells "authentic, traditional foodstuffs and related products from India."

began importing "gutkha", a tobacco product that "include[s] crushed betel nuts, aromatic spices (_viz._, lime, saffron and cardamom), menthol and/or catechu additives (optional) and crushed tobacco leaf." (Pl.'s First Am. Compl. ("Am. Compl.") ¶¶ 26, 27.) The specific gutkha product, contained in the five entries, "is a grayish/beige substance consisting of dry rough chunks of betel nut pieces and bits of tobacco leaf, coated with a powdered blend of the spices." (_Id._ ¶ 27.)  According to Plaintiff, "[t]he tobacco leaf is not finely cut, ground or powdered" and "[w]hen the gutkha is rinsed in a fine mesh strainer, the spice coating is washed off, and the remaining components, _i.e._ crushed betel nut and tobacco leaf, are plainly visible and identifiable as such." (_Id._)

As a "smokeless tobacco," Gutkha is subject both to import tariffs in accordance with the Harmonized Tariff Schedule of the United States ("HTSUS") and to federal Internal Revenue excise taxes in accordance with 26 U.S.C. § 5701(e)(2006). Title 26 defines "smokeless tobacco" as "any snuff or chewing tobacco." 26 U.S.C. § 5702(m)(1).[3] Although the tariff rate for either snuff or chewing tobacco is the same, the excise tax for snuff is higher than that for chewing tobacco. Customs is responsible for collecting both the tariffs and the excise taxes. See 6 U.S.C. §

---

[3] Title 26 also defines "chewing tobacco" as "any leaf tobacco that is not intended to be smoked." 26 U.S.C. § 5702(m)(3).

215(1); 27 C.F.R. § 41.62; Treas. Order 100-16 (May 15, 2003).

Upon entry, Shah Bros. classified the subject gutkha as "chewing tobacco" under HTSUS Subheading 2403.99.2030.[4] (Am. Compl. ¶ 32.) According to the amended complaint, in November 2007, a TTB investigator collected samples of the gutkha from Shah Bros.' premises. The investigator then submitted these samples to the TTB Regulations and Rulings division ("RRD"). (Id. ¶ 33.) In January 2008, Customs, in a CF 29 Notice of Action, changed the gutkha tariff classification to HTSUS 2403.99.3070 "tobacco ... other."[5] (Id. ¶ 34.) It appears that this classification ultimately resulted from a typographical error, as Customs in fact liquidated the merchandise as "snuff,"[6] under HTSUS 2403.99.2040.(Id. ¶ 34.)[7]

---

[4] Classification as "chewing tobacco" under HTSUS Subheading 2403.99.2030 results in a tariff rate of $0.247 per kilogram in addition to an Internal Revenue tax of $0.195 per pound. See HTSUS 2403.99.20; 26 U.S.C. § 5701(e)(2).
    According to the Defendant, Shah Bros. classified its gutkha as "spice mixtures" as per HTSUS 0910.91.00. (Def.'s Mot. to Dismiss 2.) As the court has not received any documentation or rulings from the Defendant as to this matter, and as the Defendant has not placed in dispute the content thereof, the court assumes Plaintiff's non-jurisdictional allegation to be true for the purposes of this motion.

[5] The Defendant asserts that Customs originally classified the gutkha as "chewing tobacco." (Def.'s Mot. to Dismiss 2.) However, again, as the court has been unable to obtain any documentation or rulings from the Defendant as to this matter, the court assumes Plaintiff's non-jurisdictional allegation to be true for the purposes of this motion.

[6] Classification as "snuff" under HTSUS Subheading 2403.99.2040 results in an identical tariff rate to chewing tobacco; however, the Internal Revenue tax rises to $0.585 per pound. See HTSUS 2403.99.20; 26 U.S.C. § 5701(e)(1). Title 26

Subsequently, as a result of the reclassification and liquidation, Customs issued a bill to Shah Bros. for $4,706.30. (<u>Id.</u> ¶ 35)  Shah Bros. protested this classification and assessment in Protest Nos. 2006-08-100509[8] and 2006-08-100516[9]; in November 2008, Customs denied Plaintiff's Protests and Application for Further Review. (<u>Id.</u> ¶¶ 40-41.)

Concurrent with Shah Bros.' dispute with Customs, in February 2008, Shah Bros. also requested a ruling from RRD on the tax classification of the subject merchandise. (<u>Id.</u> ¶ 36.)  RRD issued Priv. Ltr. Rul. 5200:2008R-122P,[10] which classified Shah Bros.' gutkha as "snuff." (<u>Id.</u>)  According to RRD, "upon visual inspection," the gutkha contained "no discernible leaf tobacco." (<u>Id.</u>)  In its January/February reclassification mentioned above,

---

defines "snuff" as "any finely cut, ground, or powdered tobacco that is not intended to be smoked." 26 U.S.C. § 5702(m)(2).

[7] Fifteen days later, Customs corrected its error and reclassified the merchandise under HTSUS 2403.99.2040, although the corrected CF 29 was not issued until July 9. (Am. Compl. ¶¶ 35, 39.)

[8] Protest No. 2006-08-100509 covered entry D52-8900504-8. (<u>See</u> Pl.'s Summons 1.)

[9] Protest No. 2006-08-100516 covered entries D52-8900489-2, D52-0899860-4, D52-0899773-9, and D52-0899179-9. (<u>See</u> Pl.'s Summons 3.)

[10] Neither party has presented the court with a copy of this document, nor has the court been able to obtain this document from TTB.  Thus, for the purposes of this motion, the court will rely upon Plaintiff's Amended Complaint as to the contents of this ruling.

Customs relied upon this RRD ruling. (Id. ¶ 41.)

Plaintiff then moved for reconsideration, requesting that TTB perform the Alcohol Tobacco and Firearms ("ATF") Procedure 87-4 ("ATF Proc. 87-4") sieve test[11] "in order to ascertain an objective result" because (1) "certain products like gutkha can be difficult to classify" and (2) "gutkha is universally marketed and consumed as chewing tobacco" (Id. ¶ 37.)  TTB denied Shah Bros.' petition on the ground that "no 'fibrous' leaf material was visible." (Id. ¶ 42.)  According to the Plaintiff, TTB did not, either in its rulings or in other communications, provide Plaintiff the results of any sieve test on the subject gutkha, if such test was even performed at all. (Id. ¶¶ 38, 42.)[12]

---

[11] ATF Proc. 87-4 serves to "advise of the testing method used by [ATF] in determining whether smokeless tobacco products are chewing tobacco or snuff under 26 U.S.C. Secs. 5701 and 5702." ATF Proc. 87-4 Sec. 1.  Because "the statutory definitions do not provide a clear delineation between what is a leaf tobacco (chewing tobacco) and what is a finely cut tobacco (snuff)," ATF instituted a sieve test to provide "object information" in order to distinguish between the two. Id. Secs. 2.02, 2.04, 2.06.  However, the sieve test "is employed only when it is not readily apparent from other available information (visual appearance, method of manufacture, etc.) whether the product is chewing tobacco or is snuff." Id. Sec. 2.06.

[12] In an about-face, on January 27, 2009, Customs issued interpretive ruling HQ HO43318,therein holding that "gutkha is 'chewing tobacco' and is classified under HTS[US] 2403.99.2030." (Id. ¶ 44.)  Further, Customs stated that "the definitions set forth in the TTB regulations are for purposes of implementing statutes other than the Customs laws and are not definitive as to the classification of the merchandise." (Id. (quotation marks omitted).)  But Customs revoked the ruling approximately sixty days later. (Id. ¶ 45.)  Informal communications with Customs, according to Plaintiff, indicated that the ruling was revoked due

In addition, other of Plaintiff's gutkha entries, entered at the same time as those at issue here, are currently subject to seizure and judicial forfeiture, as well as a (recently dissolved) criminal investigation by U.S. Immigration and Customs Enforcement.[13] [14] (Am. Compl. ¶¶ 46-47.)  Plaintiff alleges that these entries are (a) identical to those at issue in this case and (b) "aris[e] out of the same series of...transactions occurring during the same time frame." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Br.") 12.)  The Defendant has not challenged the veracity of either of these two factual assertions.

Having paid all duties and taxes, Shah Bros. filed its Summons and initial Complaint on April 29, 2009.  As noted above, the Defendant moved to confess judgment as to the entries at issue, *i.e.*, to reclassify the goods under HTSUS Subheading 2403.99.2030 as "chewing tobacco" and to reliquidate the entries accordingly, refunding the excess Internal Revenue tax paid, together with

---

to the Shah Bros. dispute with TTB. (Id.)

[13] Plaintiff claims only that the seizure and investigation are both results of the erroneous classification of gutkha as snuff. See Am. Compl. ¶¶ 46, 47.  The court has no details before it concerning the precise nature of the seizure and the criminal investigation; however, this information is not necessary for the court's determination, except that the court will assume as true Plaintiff's allegation that Customs relied upon the TTB classification of the imported goods when seizing those goods and investigating Plaintiff.

[14] Defendant has recently informed the court that the criminal investigation has been dissolved. (Def.'s Resp. to Cts.' Questions at 3.)

interest.   Plaintiff objected to this motion.   Ultimately, the court granted the Defendant's motion and partial judgment was issued for Shah Bros.

Remaining before the court is Plaintiff's First Amended Complaint with the court, asserting jurisdiction under 28 U.S.C. § 1581(a), (i)(1) and (i)(4) (2006).   The amended complaint makes two allegations.   First, Shah Bros. challenges TTB's "erroneous administration and enforcement of the relevant statutes, regulations and test procedures in determining the classification of imported gutkha for tax assessment and revenue collection purposes." (Am. Compl. ¶ 5.)   In this charge, Plaintiff claims that "TTB and [Customs] have treated gutkha inconsistently in the past," (id. ¶ 50,) and have acted arbitrarily and contrary to law in imposing "discernable leaf tobacco" and "fibrous leaf material" requirements. (Id. ¶¶ 51, 54.)   Again according to the complaint, as a result of TTB's actions, Shah Bros. "has [been] adversely affected . . . because [TTB's] decision has resulted in the imposition of a higher excise tax, a seizure and a criminal investigation." (Id. ¶ 53.)

Second, Shah Bros. alleges that Customs "improperly performed its . . . role[15] with respect to the determination of the tax

---

[15] Plaintiff originally referred to Customs' role here as "ministerial." (Id. ¶ 55.)   However, in its opposition brief to Defendant's motion, Plaintiff states that "[t]o the extent Defendant is troubled by the use of the word 'ministerial' in the First Amended Complaint, with leave of the Court, Shah Bros. is

status of gutkha and the exaction of additional tax because it erroneously relied on TTB's arbitrary classification of gutkha as 'snuff.'" (Id. ¶ 55.)   Plaintiff also references a more recent summons and complaint that address Customs' classification of other "identical" entries. (Pl.'s Br. 12; Notice of Errata to Pl.'s Opp'n to Def.'s Mot. to Dismiss 1-2 (informing the court that it has filed a summons and complaint for Court. No. 10-00205 which covers Protest No. 1601-10-100051).)   Shah Bros. seeks declaratory and equitable relief.

The Defendant asserts, that because of its confession of judgment, Plaintiff has received complete relief in the form of reclassification of the gutkha imports at issue.  As a consequence, the Defendant argues, Shah Bros. cannot assert any claim under either section 1581(a) or section 1581(i).  Further, because the Defendant confessed judgment as to Plaintiff's classification claim, the Defendant argues that no case or controversy exists, and therefore this matter is not justiciable under Article III of the Constitution.

## II. Analysis

Whether jurisdiction exists is a question of law. Sky Techs. LLC v. SAP AG, 576 F.3d 1374, 1378 (Fed. Cir. 2009). Because the Defendant has moved to dismiss Plaintiff's action for lack of jurisdiction, the court accepts as true all factual allegations

---

amenable to deleting this word." (Pl.'s Br. 9 n.3.)

asserted in Shah Bros.' Amended Complaint. <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975); <u>Ritchie v. Simpson</u>, 170 F.3d 1092, 1097 (Fed. Cir. 1999). Nonetheless, Plaintiff, "[the] party seeking the exercise of jurisdiction in its favor[,] has the burden of establishing that [] jurisdiction exists." <u>Rocovich v. United States</u>, 933 F.2d 991, 993 (Fed. Cir. 1991) (citing <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269, 278 (1936)).[16]

Proper categorization of Plaintiff's claims within the framework of this Court's statutory jurisdiction provides context, and is thus "logically antecedent," to discussion of Article III justiciability. <u>Cf.</u> <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 831 (1999) (addressing class certification questions before turning to Article III considerations, as "the class certification issues are[] . . . 'logically antecedent' to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before

---

[16] As a consequence, "[i]f a motion to dismiss for lack of subject matter jurisdiction[] . . . challenges the truth of the jurisdictional facts alleged in the complaint, the [] court may consider relevant evidence in order to resolve the factual dispute." <u>Reynolds v. Army & Air Force Exchange Service</u>, 846 F.2d 746, 747 (Fed. Cir. 1988). However it remains Plaintiff's burden to present evidence to establish jurisdiction. <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942) ("if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof." (citation omitted)); <u>Ritchie</u>, 170 F.3d at 1099 ("a [plaintiff's] allegations alone do not conclusively establish standing. If challenged, the facts alleged which establish standing are part of the [plaintiff's] case, and[] . . . must be affirmatively proved." (citation omitted)).

Article III standing" (citations omitted)).


## A. Direct Review of TTB's Actions is Precluded in this Court

As explained below, the court does not have jurisdiction over Plaintiff's direct challenge seeking declaratory relief from TTB's actions.

### i. Direct Review of TTB's Alleged Decision Pursuant to Section 1581(a) is Unavailable

Section 1581(a) applies only to protests of Customs' decisions. See 28 U.S.C. § 1581(a) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under [19 U.S.C. § 1515]."); 19 U.S.C. § 1515(a) (noting the protesting party may file a civil action contesting the denial of protests under 19 U.S.C. § 1514); id. § 1514 (providing for protests of "decisions of the Customs Service"). As such, TTB's alleged decision is not directly reviewable under this subsection.[17]

---

[17] The court notes that Plaintiff's challenges to Customs' actions regarding the protests before the court were appropriately brought under 28 U.S.C. § 1581(a), a valid protest having been filed pursuant to 19 U.S.C. § 1514. As we explain below, because Customs was not bound to follow TTB and, indeed, TTB has no statutory or regulatory authority over imports of tobacco products, see supra, Plaintiff was challenging Customs' decision to classify the gutkha consistent with TTB's analysis and recommendations. Thus, Plaintiff contested "decisions" by Customs, namely, Customs' classification of, and the subsequent tax rate assigned to, the subject merchandise. See Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006) (noting that courts must therefore "look to the true nature of the action" in determining jurisdiction (quoting Williams v.

**ii. Direct Review Pursuant to Section 1581(i) is Unavailable**

In addition to 1581(a), in seeking review of TTB's actions, Plaintiff attempts to invoke the court's "residual" jurisdiction under 28 U.S.C. § 1581(i)(4).  1581(i) provides:

> In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

Id.   Plaintiff asserts that its action challenging TTB's

---

Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986)))(quotation marks omitted).
 The court also notes that Customs' process in classifying merchandise is challenged in a protest, and reviewed here under subsection 1581(a). See Autoalliance Int'l, Inc. v. United States, 29 CIT 1082, 1093, 398 F. Supp. 2d 1326, 1336 (2005). Cf. Luxury Int'l, Inc. v. United States, 23 CIT 694, 697, 69 F. Supp. 2d 1364, 1368 (1999) ("the gravamen of the allegations before the Court and the relief sought by [Plaintiff] concern 'the regulations promulgated by Customs and their administration and enforcement by that agency.' The Court is empowered to determine whether Customs acted properly in enforcing the regulations pertaining to the exclusion of the LCD games. See 28 U.S.C. § 1581(a)") (citations omitted).

classification of Plaintiff's merchandise "arises out of" a law that provides for TTB's "administration and enforcement" of a law that involves "revenue from imports," i.e., 26 U.S.C. §§ 5701, 5702.[18]

The Defendant states that the court cannot review actions taken by TTB, because "regardless of TTB's ruling policy, CBP is the entity ultimately responsible for classifying merchandise and assessing excise tax, although [CBP] may consider TTB's rulings in those determinations." (Def.'s Mot. to Dismiss 7.)   As such, "CBP's reliance upon TTB's rulings would naturally be a part of the inquiry in a typical protest case arising under section 1581(a), and therefore unreviewable under section 1581(i)." (Id. 7-8.)[19]

Plaintiff responds that, because the excise taxes at issue "are internal revenue [] taxes[,] TTB is the agency charged with administering the statute" and "shares responsibility with Customs for assessing and collecting the higher tax rate on gutkha." (Pl's Br. 9 (citing Ammex, Inc. v. United States, 419 F.3d 1342, 1346 (Fed. Cir. 2005)).[20]

---

[18] Although "district courts have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports and tonnage," such jurisdiction "except[s] matters within the jurisdiction of the Court of International Trade", 28 U.S.C. § 1340, as will be discussed below.

[19] The court reads the Defendant's statements as arguing that TTB's decision does not qualify as "administration or enforcement."

[20] Plaintiff also insists that its reading of TTB's involvement in assessment of the instant excise taxes "does not

As a matter of law, however, the court cannot agree with Plaintiff's characterization of the current relationship between Customs and TTB in the administration of the excise tax on tobacco imports. Rather, it is Customs, not TTB, that both "administers" and "enforces" the excise taxes imposed on tobacco imports. This is because authority as to assessment of excise taxes, and the classification associated with this assessment, lies with Customs and no longer with the Treasury Department. Specifically, Treasury Department Order 100-16 provides:

> Consistent with the transfer of the functions, personnel, assets, and liabilities of the United States Customs Service to the Department of Homeland Security[21] as set forth in [6 U.S.C. § 203(1)], <u>there is hereby delegated to the Secretary of Homeland Security the authority related to the Customs revenue functions</u> vested in the Secretary of the Treasury as set forth in [6 U.S.C. §§ 212, 215] . . . .

Treas. Dep't Order No. 100-16 ¶ 1, 68 Fed. Reg. 28,322 (May 23, 2003 (emphasis added)). This delegation is not limited in any way that is relevant here.[22] Section 212 does provide that, notwithstanding

---

run afoul of the <u>Homeland Security Act</u>, 6 U.S.C. [§ 215]." (Pl.'s Br. 9).

[21] CBP -- formerly the U.S. Customs service, a part of the Treasury Department -- is now organized as a component of the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, § 403(1), 2002 U.S.C.C.A.N. (116 Stat.) 2137, 2178, and the Reorganization Plan Modification for the Department of Homeland Security, H.R. Doc. No. 108-32, p.4 (Feb. 4, 2003).

[22] Moreover:

the broad statutory delegation of Treasury Department authority to

the Department of Homeland Security provided in section 203:

> authority related to Customs revenue functions that was
> vested in the Secretary of the Treasury by law before the
> effective date of this chapter under those provisions of
> law set forth in paragraph (2)[23] shall not be transferred
> to the Secretary [of Homeland Security] by reason of this
> chapter . . . .

6 U.S.C. § 212(a)(1).  However, important to the case at hand, "on

and after the effective date of this chapter, the Secretary of the

Treasury may delegate any such authority to the Secretary [of

Homeland Security] at the discretion of the Secretary of the

Treasury." Id.  As previously mentioned, the Treasury Department

delegated authority to Customs as to "Customs revenue functions."

Section 215 defines "Customs revenue functions" as, among other

things, "[a]ssessing and collecting customs duties[,]  . . . excise

---

> To the extent this Delegation of Authority requires any
> revocation of any [] prior Order or Directive of the
> Secretary of the Treasury, such prior Order or
> Directive is hereby revoked.

Id. ¶ 4.

   The delegation is subject to certain exceptions that are not
relevant here. Treas. Dep't Order No. 100-16 ¶ 1(a)(i)-(ii), 68
Fed. Reg. 28,322 (May 23, 2003).  Express exceptions listed in
the Order imply that the delegation to Customs, of the "authority
related to the Customs revenue functions vested in the Secretary
of the Treasury," is otherwise comprehensive. See Andrus v.
Glover Constr. Co., 446 U.S. 608, 616-617 (1980); 2A Norman J.
Singer, Sutherland Statutory Construction § 47:11 (7th ed. 2010).

   [23] Provisions referred to in paragraph (2) include "any []
provision of law vesting customs revenue functions in the
Secretary of the Treasury." 6 U.S.C. § 212(a)(2).

taxes, fees, and penalties due on imported merchandise, including classifying and valuing merchandise for purposes of such assessment." Id. § 215(1) (emphasis added).  Thus, as a Bureau under the Treasury Department, TTB no longer has authority as to these Customs revenue functions involving imported goods.  Rather, that authority lies directly with Customs.

Plaintiff provides no support for its position that TTB "is charged with administering" the excise tax and has not pointed to a single "law" that provides for TTB's administration of the excise tax as to imports.  Nor could it.  As part of the Treasury Department, TTB originally was granted authority to administer 26 U.S.C. §§ 5701 and 5702.  See 6 U.S.C. § 212(a)(1); id. § 531(c)(2), (d).  See generally 27 C.F.R. §§ 40.1-46.274.  See also Treas. Dep't Order 120-01 ¶ 4 [full cite - IRS bulletin] (Jan. 24, 2003).  However, TTB's authority extends only as far as the "duties of the [Treasury] Secretary."  See Treas. Dep't Order 120-01 ¶ 3; TTB Order O 1135.41A ¶ 3 (Dec. 3, 2008).  As noted above, the Treasury Secretary's authority as to excise taxes on imported goods is delegable, and, indeed, has been delegated to Customs.  Consequently, TTB's "administration" of 26 U.S.C. §§ 5701 and 5702 is limited to domestically-manufactured tobacco products.  Plaintiff's assertion that Customs and TTB "share[] responsibility . . . for assessing and collecting the higher tax rate on gutkha" (Pl.'s Br. 9) is therefore without statutory or regulatory support.  Only Customs now

"administers" laws associated with such taxes. Treas. Dep't Order No. 100-16 ¶ 1; 6 U.S.C. § 215(1).[24]

Plaintiff also attempts to argue that TTB administers the tax because it "assesses" the tax.   In support, Plaintiff references Ammex as "noting that the [Internal Revenue Service ("IRS")] assesses import taxes on fuels." (Pl.'s Br. 9 (emphasis omitted)); Ammex, 419 F.3d at 1346.  Plaintiff analogizes Ammex's conclusion to the excise taxes in this case.  But the cause of action in Ammex occurred in 1994, previous to the Treasury Department's delegation to Customs. Moreover, "assessment," in the context of taxation and customs, is defined as "the official recording of liability that triggers levy and collection efforts" Ammex, 419 F.3d at 1345 (quoting Hibbs v. Winn, 542 U.S. 88, 89 (2004), or the "recordation of the calculated amount of liability." Id.   That is, "assessment determines the specific amount of liability," id., and involves a calculation of the actual tax amount owed by the payee. See id.  As the entity with full "authority" over Customs revenue functions, Customs "assesses" excise taxes on imports and "classif[ies] and valu[es] merchandise for purposes of . . . assessment." 6 U.S.C. § 215(1).   Customs,

---

[24] For the same reasons, Plaintiff's statement -- that its reading of the relationship between Customs and TTB in administering the excise tax at issue "does not run afoul of Homeland Security Act" (Pl.'s Br. 9) -- is unpersuasive.  Perhaps Plaintiff's reading would be consistent with the original, unaltered language of the Act, but, again, pursuant to and in the context of the same Act, authority over assessment and collection of the excise tax on imported tobacco has been delegated to Customs.

therefore, as the lone "assessor," calculates and records the amount of excise taxes due on imported goods and, accordingly, "triggers" collection of the excise tax at issue; these actions analogize to "administration" of the tax.  Thus <u>Ammex</u> does not support Plaintiff's position, and Shah Bros. cannot assert jurisdiction under 1581(i)(4).[25]

Plaintiff also asserts jurisdiction pursuant to 1581(i)(1), claiming that its on-going dispute with Customs and TTB arises out of a law providing for revenue from imports, i.e., the imposition of excise taxes on Shah Bros.' goods.  Further, Plaintiff complains that it must continually contest each classification made by Customs for each of its entries, and must expend monetary and other resources thereon.  Plaintiff argues that subsection 1581(i) is available because other sections of the jurisdictional statute -- here, subsection 1581(a)-- are "manifestly inadequate."  <u>See</u> <u>Hartford Fire Ins. Co. v. United States</u>, 544 F.3d 1289, 1292 (Fed. Cir. 2008) However, because Customs has the authority to classify the goods at issue, protest of the classification before Customs and review here

---

[25] Plaintiff also points to the language of the Protest decision noting that Customs, in denying Plaintiff's protest, gave the explanation that the "classification [was] based on [the] ruling issued by the TTB," the "governing" entity involved. (Ex. B to Pl.'s Br. at 1.)  However, given the plain language of the statute and Treasury regulation, the appropriate issue is whether Customs properly followed a TTB decision in light of the delegation. (<u>Accord</u> Def.'s Reply in Supp. of Its Mot. to Dismiss ("Def.'s Reply") 7.)  The reviewable action is Customs', not TTB's.

is not an inadequate remedy, as demonstrated by Defendant's confession of judgment.[26] [27]

The fact that there may be some delay associated with the protest scheme does not justify application of subsection 1581(i). Int'l Customs Products, Inc. v. United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006)("[D]elays inherent in the statutory process do not render it manifestly inadequate" (citing Am. Air Parcel Forwarding Co. v. United States, 718 F.2d 1546, 1551 (Fed. Cir. 1983) ("[Customs'] regulations have not built unconscionable delay into the protest procedure")). But see United States Cane Sugar Refiners Assoc. v. Block, 69 C.C.P.A. 172, 175 (1982) (Special circumstances of the subsection 1581(a) review warranted subsection 1581(i) jurisdiction: "We are persuaded that in this case, involving the potential for immediate injury and irreparable harm to an industry and a substantial impact on the national economy, the delay inherent

---

[26] See Shinyei Corp. of America v. United States, 355 F.3d 1297, 1304-1305 (Fed. Cir. 2004). See also Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992).

[27] Compare United States v. United States Shoe Corp., 523 U.S. 360, 363, 365 (1998) (although petitioner filed a protest, jurisdiction was available under section 1581(i) because Customs "protests are not pivotal" when "Customs performs no active role, [but] merely passively collects HMT payments."); Gilda Indus. v. United States, 446 F.3d 1271, 1276 (Fed. Cir. 2006) ("Gilda does not challenge any decision by Customs. The duty to which Gilda objects was imposed pursuant to a decision of the Trade Representative. Because Customs has no authority to overturn or disregard the Trade Representative's decision, Customs would have no authority to grant relief in a protest action challenging the imposition of the duty.").

in proceeding under § 1581(a) makes relief under that provision manifestly inadequate and, accordingly, the court has jurisdiction in this case under § 1581(i)."); <u>Am. Ass'n of Exps. & Imps. v. United States</u>, 751 F.2d 1239, 1245 (Fed. Cir. 1985) ("The objective of the addition of § 1581(i) was to make it clear that . . . prospective importers challenging Customs Service regulations imposing import restrictions need not attempt to import merchandise, file a protest and then contest the administrative denial of the protest in the CIT under § 1581(a).")

Moreover, as issue preclusion does not apply to customs classification cases, and each entry or set of entries contained in a summons is treated *de novo* in the ensuing litigation before the court as to those entries, any declaration by the court would have limited effect as to future entries. <u>See</u> <u>United States v. Stone & Downer Co.</u>, 274 U.S. 225, 233-34 (1927) ("[T]he finding of fact and the construction of the statute and classification thereunder as against an importer [is] not res judicata in respect of a subsequent importation involving the same issue of fact and the same question of law."); <u>Avenues in Leather, Inc. v. United States</u>, 317 F.3d 1399, 1403 (Fed. Cir. 2003) ("Under the public policy adopted by the Supreme Court in <u>Stone & Downer</u>, each new entry is a new classification cause of action, giving the importer a new day in court."); <u>Schott Optical Glass v. United States</u>, 750 F.2d 62, 64 (Fed. Cir. 1984) ("The opportunity to relitigate applies to questions

of construction of the classifying statute as well as to questions

of fact as to the merchandise." (citation omitted).[28]

Plaintiff also alleges that the court has jurisdiction to review

what Plaintiff characterizes as TTB's "final agency action" Priv.

Ltr. Rul. 5200:2008R-122P "because Plaintiff otherwise would be

deprived of a remedy for the unlawful actions against it," (Am.

Compl. ¶¶ 8, 56,) and "because it has been adversely affected and

suffered economic injury as a direct result of the actions of TTB and

[Customs] within the meaning of the Administrative Procedures Act,

5 U.S.C. § 702." (Id. ¶ 11.)

The court disagrees.  The Plaintiff can use neither 1581(i), nor

the APA, to circumvent the appropriate statutory channels for

bringing its claim.  See e.g., Bowen v. Mass., 487 U.S. 879, 903

(1988) ("Congress did not intend the general grant of review in the

APA to duplicate existing procedures for review of agency action[,]

[and] . . . § 704 does not provide additional judicial remedies in

situations where the Congress has provided special and adequate

review procedures." (quotation marks, footnotes and citations

omitted)); Abitibi-Consol. Inc. v. United States, 30 CIT 714, 718,

437 F. Supp. 2d 1352, 1357 (2006) (noting that Section 704 of the APA

---

[28] Though *stare decisis* does apply in classification actions,
see Avenues in Leather, Inc. v. United States, 423 F.3d 1330
(Fed. Cir. 2005); DaimlerChrysler Corp. v. United States, 442
F.3d 1313, 1321 (Fed. Cir. 2006), this does not alter the fact
that "each new entry is a new classification cause of action."
Avenues in Leather, 317 F.3d at 1403.

"is mirrored in the court's residual jurisdiction case law, which . . . prescribes that section 1581(i) supplies jurisdiction only if a remedy under another section of 1581 is unavailable or manifestly inadequate").[29]

Plaintiff notes, correctly, that this Court does not have jurisdiction over seizures and forfeitures themselves, even when performed by Customs. 28 U.S.C. §§ 1356 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of any seizure under any law of the United States on land or upon waters not within admiralty and maritime jurisdiction, except matters within the jurisdiction of the Court of International Trade under [28 U.S.C. § 1582[30]]"), 1355 (" The district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under [28 U.S.C. § 1582]"). <u>See also</u> <u>Hansen v. United States</u>, 1 Cust. Ct. 752 (1938); <u>Sheldon & Co. v. United States</u>, 8 Ct. Cust. 215 (1917); <u>In re Chichester</u>, 48 F. 281 (1891).

---

[29] Plaintiff also raises the specter of Customs' evasion of review of its own improper administration and enforcement of its classification and testing procedures by a repeated confession of judgment in Court. No. 10-00205.  It is sufficient to note that this scenario is not presently before the court.

[30] 28 U.S.C. § 1582 involves certain actions commenced by the United States to recover civil penalties, bond, or customs duties.  As such, section 1582 is not applicable here.

Nor does the Court have jurisdiction over criminal prosecutions. 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

However, any actual Customs "decision" underlying such seizure, forfeiture, or criminal prosecution is protestable.[31]  The fact that Customs, seizes and forfeits the classified imports

---

[31] Said protest "shall be filed with [Customs] within 180 days after but not before . . . (A) date of liquidation or reliquidation, or . . . (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made." 19 U.S.C. § 1514(c)(3)(A)-(B)).
    Case law indicates that review of some classifications may only be had following the denial of a protest <u>and</u> liquidation and payment of duties. <u>See</u> <u>United States v. Boe</u>, 64 CCPA 11, C.A.D. 1177, 543 F.2d 151, 156 (1976) ("[T]he dispute between the parties concerns classification of the merchandise. Classification is but one step in the liquidation process, appraisement being another. Hence the subject civil action directly involves the liquidation procedure. Such actions are governed by § 1514(b)(2)(A) [(now 19 U.S.C. § 1514(c)(3)(A))]. Liquidation not having occurred, importer's protests were premature."). <u>See also</u> 28 U.S.C. § 2637(a) ("A civil action contesting the denial of a protest under [19 U.S.C. § 1515] may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced, except that a surety's obligation to pay such liquidated duties, charges, or exactions is limited to the sum of any bond related to each entry included in the denied protest.").  The <u>Boe</u> court refused to apply 19 U.S.C. § 1514(b)(2)(B) - the predecessor to the current 19 U.S.C. § 1514(c)(3)(B) - in a classification action.  However, significantly, in <u>Boe</u>, the plaintiff was seeking "prompt and specific liquidation" under its claimed classification. <u>Boe</u>, 64 CCPA at 156.  In the case before the court, Plaintiff is seeking to avoid criminal prosecution and judicial forfeiture.  In addition, Plaintiff has already filed another complaint concerning additional entries it believes were classified incorrectly. <u>Def's Resp. to Questions</u> at 6.

neither deprives a plaintiff of the protest procedure under 19
U.S.C. § 1514(a)(2) nor divests this Court of jurisdiction over
the protest pursuant to 28 U.S.C. § 1581(a).  Further,  Cf. Campus
Sportswear Co. v. United States, 621 F. Supp. 365 (E.D. Mo. 1985)
(Court of International Trade maintains jurisdiction to evaluate
Customs' classification of goods prior to imposition of penalty,
though the imposition of the penalty itself falls under the
jurisdiction of the district court).  Thus, regardless of the
seizure action, Plaintiff's remedy is still to protest any
Customs' decision.

The special statutory procedures for protest and review
specifically contemplate this relationship.   Under 19 U.S.C. §
1499, Customs may detain, seize and forfeit merchandise.  See 19
U.S.C. § 1499(c)(1),(4).  However, if Customs fails "to make a
final determination with respect to the admissibility of detained
merchandise within 30 days after the merchandise has been presented
for customs examination, or such longer period if specifically
authorized by law, [it] shall be treated as a decision of the
Customs Service to exclude the merchandise for purposes of sections
1514(a)(4) of this title [and thus subject to protest and judicial
review]." See 19 U.S.C. § 1499(c)(5)(A).  Moreover, as may be
relevant to the dispute between the parties here, notice of testing
procedures and results are specifically required. See 19 U.S.C. §
1499(c)(3)(A).

Consequently, when considered in light of the full array of remedies available under 28 U.S.C. § 1581(a), the court cannot find the protest review procedures inadequate here.


### III. Conclusion

For the foregoing reasons, the court hereby ORDERS that Defendant's motion to dismiss for lack of jurisdiction is GRANTED.

Judgment will be entered accordingly.


                                    ___/s/ Donald C. Pogue
                                    Donald C. Pogue, Judge

Dated:     October 6, 2010
           New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

```
┌─────────────────────────────────────────┐
│ SHAH BROTHERS, INC.,                     │
│                                          │
│                 Plaintiff,               │
│                                          │
│                 v.                       │
│                                          │
│ UNITED STATES,                           │
│                                          │
│                 Defendant.               │
└─────────────────────────────────────────┘
```

Before: Pogue, Judge

Court No. 09-00180

## JUDGMENT

Upon consideration of all papers and proceedings in this matter,

IT IS HEREBY ORDERED that the court's prior Order of Partial Judgment of January 27, 2010, is incorporated herein, and

IT IS FURTHER ORDERED that Plaintiff's further amended complaint for declaratory and equitable relief is dismissed.


　/s/ Donald C. Pogue　

Donald C. Pogue, Judge


Dated:     October 6, 2010
           New York, New York